UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA PACHECO,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:22-cv-00190-JLT-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANT DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT, AND AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. Nos. 15, 20) |

Joanna Pacheco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 15, 20-21). For the reasons set forth more fully below, the undersigned recommends the district court deny Plaintiff's motion for summary judgment, grant Defendant's cross motion for summary judgment, and affirm the Commissioner's decision.

////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on June 20, 2019, alleging a disability onset date of March 15, 2019. (AR 263-78). Benefits were denied initially (AR 95-124) and upon reconsideration (AR 127-58). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on January 5, 2021. (AR 44-78). Plaintiff testified at the hearing and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 12-29) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 32 years old at the time of the hearing. (AR 51). She completed high school and testified that she is starting classes at community college. (AR 52-53). Plaintiff testified that she lives with her boyfriend and five children ages 12, 8, 6, 4, and 3. (AR 51). Plaintiff has work history as a cashier. (AR 54-57, 75). Plaintiff testified that she tried to look for work but is not hired because of her seizure disorder. (AR 59). She testified that she had three seizures in December 2020, two seizures in October 2020, and three seizures in January 2020. (AR 61-62, 71). Her seizures in October 2020 occurred after she ran out of her seizure medication. (AR 72). After she has a seizure she feels anxious and compared it to "waking up from a nap," but testified she is able to get up and help with housework an hour after a seizure. (AR 64-66).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

2

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also

consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 15, 2019, the alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff has the following severe impairments: tuberous sclerosis, epilepsy, and anxiety. (AR 18). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 19). The ALJ then found that Plaintiff has the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), including the ability to lift and carry up to 50 pounds occasionally and 25 pounds frequently, stand and/or walk up to 6 hours in an 8 hour workday, and sit at least 6 hours in an 8 hour workday. She can never climb ladders, ropes, and scaffolds, but can occasionally climb stairs. The claimant should avoid all exposure to hazards, such as dangerous moving machinery (i.e., machinery that could be expected to cause injury with inattention), unprotected heights, open fire, and open bodies of water. She can understand, remember, and carry out simple, routine, and repetitive tasks with ordinary supervision, maintaining attention concentration and pace for 2-hour increments before a standard break.

(AR 20). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a cashier. (AR 22). In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the

5

national economy that Plaintiff can perform, including linen room attendant, lamination assembler, and laundry worker. (AR 23-24). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 15, 2019, through the date of the decision. (AR 24).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issue for this Court's review: whether the ALJ properly evaluated the medical opinion evidence. (Doc. No. 15 at 7-9).

## VII.   DISCUSSION

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In December 2019, Plaintiff's treating neurologist Vladimir Royter, M.D. opined that Plaintiff could stand/walk for 0-2 hours in an 8-hour workday; sit for 2-4 hours in an 8-hour workday; is unrestricted in using hands/fingers or feet for repetitive movements; cannot work at heights, operate machinery, or with open fire; lift 20 pounds occasionally and 10-15 pounds frequently; never climb or balance; and occasionally stoop, kneel, crouch, crawl, and reach. (AR 515-16). As noted by the ALJ, there also appears to be an additional opinion represented by

Plaintiff's counsel as one document, wherein "the pages appear to be interlineated." (AR 553-59). This document includes an additional limitation by Dr. Royter that Plaintiff would be off task 10% of the workday. (AR 554).

First, as to the consistency factor, the ALJ found Dr. Royter's opinions unpersuasive because new evidence gathered after the opinion, including Plaintiff's own testimony, suggested less restrictions than those assessed by Dr. Royter; the side effects listed in the opinion are inconsistent with the record; Plaintiff's daily activities show she can do more than the assessment; no other medical opinion of record supports these opinions; and the opinions are not supported by Plaintiff's treatment notes or the objective evidence of record. (AR 22). Second, as to the supportability factor, the ALJ found the opinions unpersuasive because there is little explanation in any of the documents to support Dr. Royter's reasoning. (*Id*. (also noting the opinions are on pre-printed forms and checklists and are "presumably" based on Plaintiff's reported symptoms)).

Plaintiff generally argues that in evaluating Dr. Royter's opinion,

> the ALJ failed to identify what new evidence or testimony suggests less restrictions. The ALJ failed to identify what medication side effects are inconsistent with the record. The ALJ failed to identify what daily living activities contradict the opinion and the ALJ failed to identify what treatment notes or objective evidence does not support the opinion. The ALJ merely stated conclusions without providing any evaluation of the conflicting evidence.

(Doc. No. 15 at 9). Plaintiff is correct that when rejecting an examining or treating doctor's opinion as unsupported or inconsistent under the new regulations, an ALJ must still provide an explanation supported by substantial evidence. (Doc. No. 15 at 8 (citing *Woods*, 32 F.4th at 792)). However, "[e]ven when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may be reasonably discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (internal quotations omitted); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," provided "those inferences are there to be drawn"); *Jennifer W. v. Kijakazi*, 2022 WL 2834011, at *6 (E.D. Wash. May 19, 2022) ("As an ALJ's decision should be read as a whole, the Court considers the ALJ's overall analysis of the medical evidence."). Moreover, aside from

generally arguing that the ALJ's findings were "insufficiently vague to support the conclusion that the opinion is unpersuasive," Plaintiff does not offer evidence, aside from a summary of the medical record, to support the specific limitations opined by Dr. Royter. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing).

First, as to consistency, the ALJ found Plaintiff's "daily living activities show that she can do more than this assessment." (AR 22). An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999). As detailed in the decision, Plaintiff testified that her daily activities include caring for and assisting her five children with home schooling, including two children with special needs; walking and taking the bus; planning to start online community college; cooking; household chores; and shopping. (AR 21-22, 52-53 (noting educational goal is to be a medical assistant), 66-69, 72-73. It was reasonable for the ALJ to discount Dr. Royter's opinion because Plaintiff's daily activities "suggest much less restrictions" than the assessed limitations, including standing and walking for 0-2 hours and sitting for only 2-4 hours in an 8-hour workday. (AR 22).

Second, the ALJ noted Dr. Royter's opinion regarding side effects was inconsistent with the record,[2] no other medical opinion in the record supported the opinion, and the opinion is not supported by Plaintiff's treatment notes or the objective evidence of record. (AR 22). The regulations specifically direct that "[t]he more consistent a medical opinion(s) . . . is with the evidence from *other medical sources* and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that

---

[2] In his opinion, Dr. Royter noted that Plaintiff's medication caused side effects of dizziness and sedation. (AR 516). The ALJ found these side effects are inconsistent with the record. (AR 22). However, the Court was unable to discern any reference to reported side effects, or lack thereof, at any point in the ALJ's decision. Thus, this finding was not supported by substantial evidence. *Woods*, 32 F.4th at 792. Regardless, any error is harmless because, as discussed *supra*, the ALJ's ultimate finding that Dr. Royter's opinions were unpersuasive because they were inconsistent with the record is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Thus, it was reasonable for the ALJ to discount Dr. Royter's opinion because it was not consistent with any other medical opinion in the record. (AR 22). Moreover, in support of this finding, the ALJ's decision cited improvement of Plaintiff's seizures with medication; minimal subcortical white matter changes with no abnormal enhancing processes seen on MRI imaging; and consistent reports of no recent seizure activity in treatment notes. (AR 21, 460 (reporting seizure but presenting with unrelated concerns), 470 (reporting no recent seizures in August 2019), 531-32 (responding well to seizure medication and no seizures since last visit), 535-36 (responding well to seizure medication and no seizures since last visit), 542 (reporting no recent seizures in November 2019), 548-49, 574 (reporting no seizures since last visit)). The ALJ concluded that "[a]ccording to her treatment records and reports to her providers, medication is controlling her condition and she has not had a seizure for one year." (AR 21). While not addressed by Plaintiff, the ALJ also considered evidence that could be considered favorable to Plaintiff, including reports of seizures and "progression, regression, and resolution of tubers." (AR 21, 533). Based on the foregoing, when viewing the medical record as a whole, it was reasonable for the ALJ to conclude that the severity of limitations assessed in Dr. Royter's opinion were not consistent with Plaintiff's treatment notes and the objective evidence of record. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony).

Finally, as to supportability factor, the ALJ noted that the opinions were not persuasive because "there is little explanation . . . to support the reason for the opinions. They are simple pre-printed forms and checklists that presumable [sic] are based on [Plaintiff's] reported subjective symptoms." (AR 22). Under the new regulations, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may permissibly reject

check-off reports that do not contain any explanation of the bases of their conclusion."); *see also Gitchell v. Comm'r of Soc. Sec.*, 2023 WL 1785914, at *15 (E.D. Cal. Feb. 6, 2023) (holding ALJ appropriately considered supportability factor by finding opining doctor did not cite to specific objective findings to support his opinions). The Ninth Circuit has held that when a treating physician's check-box opinion was "based on significant experience with [Plaintiff] and supported by numerous records, [it was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, Plaintiff does cite to any objective evidence in Dr. Royter's opinions or treatment notes that would explain the severity of the opined limitations. The only arguable explanation presented by Dr. Royter in the opinion is a list of diagnoses, including tuberous sclerosis and epilepsy, without any accompanying objective medical findings. (*See* AR 553). Moreover, the ALJ reviewed Dr. Royter's treatment records as part of the decision, and noted Plaintiff reports of seizures and "progression, regression, and resolution of tubers," as well as reports of no side effects, good response to medication, and no seizures since previous visits. (AR 21, 531-32, 533, 535-36, 574). Thus, the Court is unable to discern any arguable explanation of the bases for the severe limitations assessed by Dr. Royter in the "pre-printed and checklist" opinion. The Court finds no error in the ALJ's assessment of the supportability factor.

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding that Dr. Royter's opinions were not persuasive was supported by substantial evidence after proper consideration of the supportability and consistency factors.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered medical opinion evidence. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 15) be DENIED.

2. Defendant's Cross Motion for Summary Judgment (Doc. No. 20) be GRANTED.

3. The district court AFFIRM the decision of the Commissioner of Social Security for the reasons set forth above.

4. The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   July 19, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE